IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IDA MELTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:18-cv-518-SMD |
| | ) |
| KROGER, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

On January 24, 2018, Ida Melton ("Plaintiff") filed a complaint (Doc. 1-1) in state court alleging one count of negligence against Kroger ("Defendant") based upon a fall she sustained inside Defendant's store. *See generally* (Doc. 1-1). Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 14) and brief in support thereof (Doc. 15). Plaintiff filed a response in opposition (Doc. 19) to the Motion, and Defendant filed a reply (Doc. 24). Along with its reply, Defendant also filed a Motion to Strike the Affidavit of Plaintiff (Doc. 23), which Plaintiff submitted along with her response in opposition to Defendant's Motion for Summary Judgment.

The undersigned turns first to determine Defendant's pending Motion to Strike, as such a determination may be pertinent to the undersigned's determination of Defendant's Motion for Summary Judgment.

## II.    DEFENDANT'S MOTION TO STRIKE

Defendant argues that Plaintiff's affidavit, which was submitted along with her response in opposition to Defendant's Motion for Summary Judgment, should be stricken as a sham affidavit. *See generally* (Doc. 23). Specifically, Defendant asserts that the assertions set forth in Plaintiff's affidavit contradict her previous, sworn testimony, and are based upon speculation and conjecture rather than personal knowledge. *Id*. at 1.

The Eleventh Circuit "allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts . . . prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). Prior to striking an affidavit as a "sham," the court must "find some inherent inconsistency between an affidavit and a deposition." *Allen v. Bd. of Pub. Educ. For Bibb Cty.,* 495 F.3d 1306, 1316 (11th Cir. 2007). "If no inherent inconsistency exists, the general rule allowing an affidavit to create a genuine issue 'even if it conflicts with earlier testimony in the party's deposition' . . . governs." *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1530 (11th Cir. 1987) (internal citation omitted).

Here, Plaintiff was deposed on September 19, 2018, approximately thirty-three months after she fell in Defendant's store. (Docs. 1-1, 23-1). Plaintiff's affidavit in support of her response in opposition to Defendant's Motion for Summary Judgment was provided on February 18, 2019. (Doc. 19-1). In support of its argument to strike Plaintiff's affidavit as a sham, Defendant asserts that there is a discrepancy between Plaintiff's affidavit and her deposition. (Doc. 23) at 1-4. Specifically, Defendant argues that Plaintiff's affidavit,

which states that "some unknown substance" on the floor potentially caused her fall, contradicts Plaintiff's testimony because Plaintiff "never offered any testimony regarding an alleged substance on the floor as the cause for her accident in written discovery or at her deposition." *Id*. at 2-4.

    Plaintiff's affidavit states:

> That while I was shopping in [Defendant's] store on January 26, 2016, the I [sic] was pushing a shopping cart and shopping in the store and I tripped and fell over a floor electrical plug or outlet or other electrical device embedded in the floor *or some unknown substance at the time on the floor*, of the [a]isle where items were located on shelves for sale, causing the me [sic] to trip and fall onto the floor causing physical injury to my left knee, body, hips and/or legs etc. (Please see Plaintiff's attached exhibit, a photograph on the floor and spot where I fell). Note that this outlet embedded in the floor was covered the next day when my daughter went to take this picture.

(Doc. 19-1) at 2-3 (emphasis added). Notably, this paragraph in Plaintiff's affidavit recites, almost word-for-word, paragraph six in Plaintiff's Complaint. *See* (Doc. 1-1) at ¶ 6.

    In her deposition, Plaintiff testified:

> Q. And then you said you suddenly fell. What caused you to fall?
>
> A. The thing on the floor.
>
> Q. What thing?
>
> A. One of these things (pointing).
>
> Q. So you're pointing at Exhibit 2, correct?
>
> A. Yeah.
>
> Q. And that's – you're pointing to an electrical outlet there?
>
> A. Yeah. And they already – you could – you could go in the store right now and find out where I – it was. Because they called themselves putting something over it.

Q. Okay. So it's covered now?

A. Yeah, it's covered.

Q. All right. Had you ever seen one of these electrical outlets that's in Defendant's Exhibit 2 –

A. No.

Q. – in the store before?

A. No. No.

Q. Okay. Was there anything blocking your view of that outlet that day?

A. I really don't know.

Q. Okay. The outlet that's in No. 2, Picture No. 2 there, doesn't appear to have anything around it.

A. Uh-huh.

Q. Is that the outlet that you tripped over?

A. It look like one of them.

Q. Okay.

A. Because that's why I fell.

Q. Okay. Thinking about the area where you fell, was there anything between you and the outlet which would have blocked your view of that outlet?

A. I really don't know.

Q. Okay. Did you see it after your accident?

A. I really don't know.

Q. How do you know that's what you tripped over if you didn't see it?

> A. Because something hit my foot. Something hit my foot when I went around the curve.
>
> Q. Did you ever look to see what it was?
>
> A. At first I thought I did while I was on the floor. But, you know, it's kind of – it's been so long. I can't hardly remember.

(Doc. 23-1) at 53-54 (emphasis added).

The undersigned agrees with Defendant that Plaintiff's affidavit inherently contradicts her prior testimony because nowhere in Plaintiff's testimony does she suggest that any "unknown substance" caused her to fall. Instead, according to the evidence submitted by the parties, Plaintiff provided two potential reasons for her fall: (1) the electrical outlet in the floor, and (2) the shoes she was wearing at the time of the accident. As to the electrical outlet, when questioned in her deposition about what caused her fall, Plaintiff stated: "The thing in the floor." (Doc. 16-1) at 9. Upon further clarification, Plaintiff identified an electrical outlet in the floor as "the thing" that caused her fall. *Id*. Plaintiff again acknowledged that the electrical outlet caused her fall when, in response to viewing a picture of an electrical outlet, she stated that the picture looked like the outlet that caused her fall. *Id*. at 10. As to the shoes, at another point in her deposition, Plaintiff testified that she no longer wears the shoes she wore on the day she fell because, according to Plaintiff, "those the shoes that made [her] fall." (Doc. 23-1) at 3. Importantly, Plaintiff's testimony does not indicate that an unknown substance caused her fall. Instead, Plaintiff's testimony identifies two potential sources of her fall, neither of which could reasonably be construed as an "unknown substance."

To be sure, Plaintiff does testify, when asked about how she fell, that "something hit [her] foot." (Doc. 16-1) at 9. Taken without context, this statement could support the conclusion that Plaintiff did not know what caused her fall and, therefore, lead the undersigned to find that Plaintiff's affidavit does not conflict with her testimony that an "unknown substance" caused her fall. However, in context, it is clear that Plaintiff—by stating that something hit her foot—was merely explaining how she knew that the electrical outlet caused her fall (as opposed to a slippery surface, foreign object, etc.). *See* (Doc. 16-1) at 9 (noting that, in response to how Plaintiff knew that the electrical outlet was what she tripped over, Plaintiff responded "[b]ecause something hit my foot"). Further, the undersigned finds no evidence or testimony submitted by the parties that supports Plaintiff's affidavit that an "unknown substance" caused her fall. Accordingly, the undersigned concludes that Plaintiff's affidavit is inherently inconsistent with her testimony and the evidence in this case and, as such, should be stricken.

Defendant also argues that Plaintiff's affidavit should be stricken because it contains paragraphs which "are nothing more than pure allegations and/or legal conclusions." (Doc. 23) at 4. Defendant asserts that the following paragraphs should be stricken on this basis:

> 8. That, disregarding its stated duty, Defendant, by its agents, employees and servants, committed the following acts and omissions:
> a) Failed to provide a good, safe, and proper place for the me [sic] to be, use, occupy and shop while on the subject premises;
> b) Allowed and permitted the subject premises to become and remain in dangerous condition;
> c) Failed to inspect the premises to be certain that they were in good, safe, and proper condition;
> d) Failed to warn the me [sic] and others of the unsafe, defective and dangerous condition of the subject premises;

e) Failed to safeguard its customers, including me, by maintaining equipment and/or floor space in an unsafe location;

f) failed to warn customers or me of obstacles in the [a]isles or hallways;

g) failed to warn customers or me of protruding parts of equipment located in customer [a]isles or hallways.

9. That as a direct and proximate result of one or more of these negligent acts of omissions of the Defendant, individually and by and through its agents, servants, and employees, I was caused to fall.

10. That as a direct and proximate result of this fall, I the Plaintiff suffered severe, extensive, and permanent injury, both internally and externally, and was and will continue to be hindered in attending to usual duties and affairs, and has lost and will in the future lose her usual quality of life due to her injuries. As a result of those injuries I have become liable for large sums of medical bills and will have to expend or will become reliable [sic] for additional medical bills in the future.

11. That as a direct and proximate result of this fall, I the Plaintiff has [sic] suffered loss of my valuable time and income has been used to help provide transportation and medical care and prescriptions for my care in this matter and a result of the Defendant[']s negligence.

12. As a proximate result of the Defendant's said negligence and wantonness I the Plaintiff was caused to suffer the following injuries and damages:

    A. As a proximate result of the Defendant's conduct, I the Plaintiff, have suffered physical injuries and was made sick, sore and lame;

    B. I the Plaintiff as a proximate result of the Defendant have said [sic] conduct was caused to incur medical expenses for medicine and physician's fees. Further, I will be caused to continue to incur such expenses in the future.

    C. I, the Plaintiff suffered pain and suffering from the said injuries caused by the Defendant;

    D. I, the Plaintiff, have incurred the loss of physical activities, and other opportunities socially with my church my

>   friends and other activities I used to enjoy much more frequently;
>       E. I the Plaintiff, as approximate [sic] result of the Defendant have said [sic] conduct was caused to lose income due to visits to the hospital and various doctor's appointments. Further, I may continue in the future to be caused to lose income;
>       F. I the Plaintiff suffered mental anguish and/or emotional distress from the said injuries caused by the Defendant.

(Doc. 19-1) at 3-4.

A black-letter requirement of affidavits is that they must be rooted in facts, rather than conclusory remarks. *See, e.g., HomeBingo Network, Inc. v. Chayevsky,* 428 F. Supp. 2d 1232, 1239 (S.D. Ala. 2006); *Burger King Corp. v. Lumbermens Mut. Cas. Co.,* 410 F. Supp. 2d 1249, 1255 (S.D. Fla. 2005) ("An affidavit has no probative value and must be stricken when it contains conclusions rather than statements of fact."); *Pashoian v. GTE Directories,* 208 F. Supp. 2d 1293, 1297 (M.D. Fla. 2002) ("an affidavit must be stricken when it is a conclusory argument, rather than a statement of fact"). Here, the aforementioned paragraphs in Plaintiff's affidavit are not rooted in fact. Instead, they appear to merely be a restatement of Plaintiff's complaint, which contains legal conclusions and general conclusory allegations. Accordingly, the undersigned finds that the aforementioned paragraphs should be stricken from Plaintiff's affidavit.

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. *Id.* at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Id.* An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.*, 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted); *see also Matsushita*, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### B. STATEMENT OF FACTS

On January 26, 2016, Plaintiff was a guest at Defendant's Opelika, Alabama, retail store. Pl's Compl. (Doc. 1-1). When she arrived at the store, she parked in a handicapped parking spot. (Doc. 16-1) at 5. The weather was "good," so Plaintiff did not require an umbrella. *Id*. at 6. After parking her vehicle, Plaintiff entered the store and selected a shopping cart. *Id*. at 7. She then picked up several items, and, after going "around the corner somewhere," Plaintiff fell "face down on [her] knees." *Id*. During her fall, one of her shoes came off. *Id*. at 8. Plaintiff alleges that "something hit [her] foot," which caused her to trip. (Doc. 16-1) at 3. Plaintiff asserts that the "something" that caused her to fall was an electrical outlet stationed in the floor. *Id*. at 9; (Doc. 1-1).

Prior to the date of the accident, Plaintiff shopped at Defendant's Opelika location on a regular basis, meaning approximately three or four trips per week. (Doc. 16-1) at 4-5. She never noticed the electrical outlets on the floor before her fall. *Id*. at 13. The outlet in question has a gold, metal cover which is six inches in diameter. (Doc. 16-2) at ¶ 3. The floor surrounding the outlet is gray cement. *Id*. Between the day the store opened and the day of Plaintiff's accident, there were no other customer complaints involving the outlet at

issue. *Id*. at ¶ 5. Plaintiff no longer wears the shoes she wore on the day of her fall because those are "the shoes that made [her] fall." (Doc. 16-1) at 3.

### C. DISCUSSION

Plaintiff's Complaint, which asserts one count of negligence,[1] alleges that she "tripped and fell over a floor electrical plug or outlet or other electrical device embedded in the floor" while shopping in Defendant's Opelika, Alabama, store. (Doc. 1-1) at 1-2. She further alleges that her fall was the result of Defendant's "negligent acts of omissions," including its failure to inspect the premises, failure to warn, and failure to safeguard its customers from the hazard that caused Plaintiff's fall. *Id*.

Defendant argues that Plaintiff's negligence claim should be dismissed because Plaintiff has failed to produce sufficient evidence as to the "cause in fact" of her fall. (Doc. 15) at 7-9. Defendant further argues that Plaintiff's negligence claim should be dismissed because the electrical outlet, which allegedly caused Plaintiff to fall, was open and obvious,

---

[1] Plaintiff's Complaint clearly states "COUNT I – NEGLIGENCE." (Doc. 1-1) at 1. There are no other counts explicitly set forth in the Complaint. Plaintiff references, however, "wantonness" within the Complaint on one occasion. *Id*. at ¶ 12 ("As a proximate result of the Defendant's said negligence or wantonness[,] the Plaintiff was caused to suffer the following injuries and damages;"). Defendant has construed this one-off reference to wanton conduct as a potential claim for wantonness and has argued, in its Motion for Summary Judgment, that the claim should be dismissed. (Doc. 15) at 11-13. While the Court declines to construe Plaintiff's passing reference to Defendant's "wanton" conduct as an attempt to state a claim for wantonness, the Court notes that, were it to construe such a claim, the claim is due to be dismissed because Plaintiff has not produced any evidence that would suggest Defendant's conduct was wanton. Under Alabama law, wantonness is defined as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). "[W]antonness imports pre-meditation, or knowledge and consciousness that the injury is likely to result from the act done or from the admission to act." *Tolbert v. Tolbert*, 903 So. 2d 103, 115 (Ala. 2004).

Here, even if the electrical outlet caused Plaintiff's fall, there is no evidence that Defendant acted either consciously or intentionally with regards to the outlet to cause Plaintiff's injuries. Further, there is no evidence that other customers have suffered falls or made complaints about the outlet in question. Accordingly, the undersigned cannot find, to the extent that Plaintiff is asserting a wantonness claim, that the claim should survive summary judgment.

and Plaintiff was contributorily negligent. *Id*. at 9-11. In opposition to these arguments, Plaintiff essentially refiles paragraphs, word-for-word, from her Complaint. *See* (Doc. 19).

*Plaintiff has not produced sufficient evidence to present to the jury for her negligence claim.*[2]

Under Alabama law, a store is "under a duty to exercise reasonable care to provide and maintain reasonably safe premises" for the use of customers. *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990). A store is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition. *Id*. In order, therefore, for a plaintiff to recover on a negligence claim based upon premises liability, "she must prove that [1] her fall resulted from a defect or instrumentality located on the premises, [2] that the fall was a result of the defendant['s] negligence, and [3] that the defendant[] had or should have had notice of the defect or instrumentality before the accident."[3] *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So. 2d 1162, 1164 (Ala. 1992).

---

[2] Plaintiff does not explicitly state whether her negligence claim is a "traditional" negligence claim or a premises-liability claim. However, as this Court has previously explained, only "[w]hen the affirmative conduct of the landowner causes the injury [do] traditional negligence principles apply" under Alabama law; when the injury arises from a "condition of the premises," by contrast, premises-liability standards govern. *Shelley v. White,* 782 F. Supp. 2d 1295, 1296 (M.D. Ala. 2010) (Albritton, J.) (quoting *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1053 (Ala. 2003)). Plaintiff contends that she was injured by a condition of the premises—i.e., an electrical outlet embedded in the floor—not by any affirmative act by Defendant. Accordingly, the Court will analyze Plaintiff's negligence claim according to the standards of premises-liability.

[3] As in a case like, here, "[w]here the defect is a part of the premises, as opposed to a slick spot on the floor, whether the defendant had actual or constructive notice of the defect will go to the jury regardless of whether the plaintiff makes a prima facie showing the defendant had or should have had notice of the defect at the time of the accident." *Williams v. Walgreen Co.*, Case No.: 2:16-cv-01704-SGC, 2018 WL 1964569, at * 3 (N.D. Ala. April 26, 2018) (citing *Mims v. Jack's Rest.*, 565 So. 2d 609, 610-11 (Ala. 1990)).

In order to establish the first element of a prima facie case, a premises liability plaintiff must make a showing—via substantial evidence—that the offending condition is, in fact, defective and the cause of her injury. *Iguess v. Hyundai Motor Mfg., Ala., LLC*, No. 13-0237, 2014 WL 1584480, at *3 (M.D. Ala. Apr. 21, 2014) ("However, as a threshold matter, a plaintiff must present substantial evidence that the cause of her injury was a defect in the premises."); *Mims*, 565 So. 2d at 610 ("Once a plaintiff has made a *prima facie* showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a *prima facie* showing that the defendant had or should have had notice of the defect at the time of the accident."). The mere fact that an unfortunate injury occurred does not give rise to an inference that a dangerous condition existed. *Miller ex rel. Miller v. Liberty Park Joint Venture, LLC*, 84 So. 3d 88, 92 (Ala. Civ. App. 2011)

To survive summary judgment, then, Plaintiff must present sufficient evidence that the cause of her injury was the electrical outlet itself. Here, Plaintiff testified in her deposition that the electrical outlet in the floor caused her to fall. *See* (Doc. 16-1) at 6-12. Undermining this testimony, however, is Plaintiff's testimony that the shoes she wore on the day of the incident made her fall. *Id*. at 3 (Plaintiff stated that she no longer wears the shoes she wore on the day of the accident because "these the shoes that made me fall"). This conflict in her testimony alone suggests that Plaintiff has failed to produce sufficient evidence that the electrical outlet was the cause-in-fact of her injury, as it is just as likely that her shoes caused her fall as it is that the electrical outlet caused her fall.

However, even if Plaintiff had not testified that her shoes potentially caused her fall,[4] Plaintiff has produced no evidence that the electrical outlet actually caused her fall and, therefore, has failed to set forth a prima facie case of premises liability. Indeed, while Plaintiff testified that "something hit [her] foot" and caused her to trip, *id*. at 10, she has not provided any evidence that the outlet was the culprit. For example, Plaintiff has not shown that any portion of the electrical outlet was sticking up at the time she tripped, or that it was otherwise in a condition that could have caused her foot to come into contact with it in a way that would cause her to trip. Therefore, while it is possible that Plaintiff tripped over some unidentified protruding portion of the outlet, it is also possible that Plaintiff's foot made contact with an object other than the outlet, like the wheel of the shopping cart or even her other foot. Without evidence that the outlet was protruding or something similar, it is just as plausible that Plaintiff's fall was the result of something other than the outlet. Therefore, without any evidence other than Plaintiff's speculative testimony that the outlet actually caused her fall, Defendant's Motion for Summary Judgment is due to be granted. *See Ex parte Harold L Martin Distrib. Co*., 769 So. 2d 313, 315 (Ala. 2000) (finding that the plaintiff, who testified that she did not see what she tripped on but thought it was the curb because "[t]here was nothing else there" fell into the "unavoidable conclusion" that the cause of her fall was "pure speculation" and, therefore, summary judgment was proper); *Ervin v. Excel Props., Inc*., 831 So. 2d 38, 41 (Ala. Civ.

---

[4] The undersigned notes that, while Plaintiff's testimony regarding the shoes indicates, on its face, that the shoes could have been the cause of her fall, Plaintiff's meaning behind that statement may have been different. In other words, Plaintiff's testimony that she does not wear the shoes anymore may be based upon their *association* with her fall instead of the *cause* of her fall. Accordingly, the undersigned provides the following analysis disregarding Plaintiff's testimony about her shoes.

App. 2001) (affirming summary judgment in favor of the defendant where the plaintiff fell after her foot hit "something," which she attributed to be the condition of the stairs, but had "no evidence and did not know whether that 'something' was the condition of the steps"); *Shanklin v. New Pilgrim Towers, L.P.*, 58 So. 3d 1251, 1253 (Ala. Civ. App. 2010) (holding that the plaintiff's evidence that she did not know what caused her fall but believed it was the "misleveled" elevator based on the visitor's statements to her after the accident was insufficient to show causation to survive summary judgment); *but see Hooks v. Dollar Gen. Corp.*, CIVIL ACTION NO. 1:14cv1053-MHT, 2015 WL 6964289, at *5 (M.D. Ala. Nov. 10, 2015) (denying summary judgment because the plaintiff testified unequivocally that loose concrete on a ramp caused her to fall and further "offered collateral support" for her belief that the concrete caused her fall).

Further, assuming momentarily that there was a portion of the electrical outlet sticking out from the floor, such a condition does not necessarily imply a negligent condition that would warrant liability on the part of Defendant. *See Belflowers v. Wal-Mart Stores East, L.P.*, Civil Action No. 3:08cv250-CSC, 2008 WL 4767527, at *4 (M.D. Ala. Oct. 30, 2008) (finding that testimony that the plaintiff's shoe was caught under shelving does not suggest the existence of a negligent condition). This is particularly so considering that there is no evidence that anyone else has been injured by the electrical outlet or has reported any issues with the outlet between the time the store opened in July 2007 and the time of Plaintiff's fall in January 2016. *See* (Doc. 16-2) at 1-2; *see also Williams*, 2018 WL 1964569, at *3 ("Proof no one else has been injured by the alleged defect is evidence that the condition is not a defect." (citing *Miller*, 84 So. 3d at 92-94 (gap between fence frame

and surface of tennis court was not a defect because tennis court had been in continuous use for over thirteen years and no one else had been injured like plaintiff)).

Accordingly, the Court finds that Plaintiff has merely provided speculation regarding the cause of her fall. Therefore, because she has not provided the Court with sufficient evidence that the electrical outlet caused her fall, Defendant's Motion for Summary Judgment (Doc. 14) must be granted.

*Plaintiff's negligence claims should be dismissed because the condition was open and obvious.*

Defendant argues that, even if the outlet actually caused Plaintiff's fall, summary judgment remains due to be granted because the outlet was open and obvious, and Plaintiff was contributorily negligent. (Doc. 15) at 9-11. Plaintiff does not substantively respond to Defendant's argument that the outlet was, or should have been, open and obvious to her. *See generally* (Doc. 19). Instead, Plaintiff responds with paragraphs of general legal conclusions taken from her Complaint that alleges Defendant "failed to warn" her of the dangerous condition, despite having a duty to do so. *See id*.

A finding that the condition that caused the injury was "open and obvious" to the plaintiff is an affirmative defense that will bar recovery in a negligence claim based upon premises liability. *See e.g., Denmark v. Mercantile Stores Co., Inc.*, 844 So. 2d 1189, 1194-95 (Ala. 2002). A condition is open and obvious when it is known to the plaintiff or should have been observed by the plaintiff in the exercise of reasonable care. *Quillen v. Quillen,* 388 So. 2d 985, 989 (Ala. 1980). Ordinarily, questions of whether a condition is open and obvious should be determined by the factfinder, and should not be resolved on summary

judgment. *See Harley v. Bruno's Supermarkets, Inc.,* 888 So. 2d 525, 526-27 (Ala. Civ. App. 2004). Indeed, "the plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury." *F.W. Woolworth Co. v. Bradbury*, 140 So. 2d 824, 825-26 (1962). The burden to prove whether a condition is open and obvious rests with the defendant. *Denmark*, 844 So. 2d at 1195.

Here, the undisputed evidence indicates that the outlet in question was located in the center of Defendant's shopping aisle and was covered with a shiny, gold metal cover, approximately six inches in diameter. (Doc. 16-2) at 2. The floor was grey cement. *Id*. According to the photograph of the outlet submitted by Defendant, the view of the outlet is otherwise unobstructed. (Doc. 16-3). Although Plaintiff testified that she cannot recall if there was anything blocking her view of the outlet at the time she fell, *see* (Doc. 23-1) at 4-5, there is no evidence (or even allegations) that the lighting in the store was poor, or that any other condition present at the time of Plaintiff's fall negatively affected the way the outlet was observed, or should have been observed, by Plaintiff.

Even though a jury should typically resolve the question of whether a condition is open and obvious, the undersigned finds that the substantial evidence in this case indicates that the outlet was open and obvious. The evidence presented by Defendant shows that the outlet is a different color than the floor; that the outlet was located in the middle of the aisle; and that the cover for the outlet was approximately six inches in diameter. The photograph submitted by Defendant shows that the outlet was unobstructed, and there is no evidence to indicate that the conditions at the time of Plaintiff's fall were different than the conditions depicted in the photograph. Further, Plaintiff has not substantively opposed

17

Defendant's open-and-obvious argument. Therefore, under these circumstances, the undersigned finds that there is no material issue of fact as to whether the outlet was open and obvious to Plaintiff. Accordingly, as an alternative basis for summary judgment, Defendant's motion should be granted based upon the affirmative defense that the outlet was open and obvious.

## V.     CONCLUSION

For the foregoing reasons, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED. A separate judgment shall enter.

Done this 16th day of July, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE
